IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| T.D., individually and on behalf of all others similarly situated, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>PIEDMONT HEALTHCARE, INC.,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:23-CV-5416-TWT |

**OPINION AND ORDER**

This is a putative class action case. It is before the Court on Plaintiff T.D.'s Motion for Reconsideration or Leave to Amend in the Alternative [Doc. 48]. For the reasons set forth below, T.D.'s Motion for Reconsideration or Leave to Amend in the Alternative [Doc. 48] is DENIED.

### I.  Background

Plaintiffs T.D., A.G., J.G., and K.W. allege on behalf of themselves and others similarly situated that Defendant Piedmont Healthcare, Inc. ("Piedmont") wrongfully disclosed confidential health information to Facebook via a tracking tool that it installed on its websites. (Am. Compl. ¶¶ 2–3). Specifically, by installing the "Meta Pixel" tracking tool, Piedmont allegedly disclosed without consent the personally identifiable information and protected health information of patients who entered their sensitive information on Piedmont's website and MyChart patient portal. (*Id.* ¶¶ 3, 15). The Plaintiffs sought relief under the following seven counts: (1) invasion of

privacy, (2) breach of fiduciary duties, (3) negligence, including negligence per se, (4) breach of implied contract, (5) breach of contract, (6) unjust enrichment, in the alternative to Counts IV and V, and (7) violations of the Electronic Communications Privacy Act ("ECPA").

Earlier this year, this Court dismissed the Plaintiffs' Amended Complaint in its entirety. (*See generally* Aug. 28, 2024, Op. & Order ("Opinion & Order") [Doc. 46]). Now, the Plaintiffs move for reconsideration of the dismissal motion or, alternatively, leave to file their Second Amended Complaint [Doc. 48].

## II. Legal Standard

Although the Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration, they are common in practice under Rule 59(e). Under Rule 59(e), a party may move to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985). Local Rule 7.2 states that motions for reconsideration are not to be filed "as a matter of routine practice," but only when "absolutely necessary." LR 7.2(E), NDGa. In particular, a party may move for reconsideration when there is (1) newly discovered evidence, (2) an

2

intervening change in controlling law, or (3) the need to correct clear error or prevent manifest injustice. *See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (11th Cir. 2010). A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Shuler v. Garrison*, 718 F. App'x 825, 828 (11th Cir. 2017) (citation omitted). A motion for reconsideration is not a "vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar arguments to test whether the Court will change its mind." *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

Regarding the Plaintiffs' motion in the alternative for leave to amend, the parties debate whether the liberal amendment standard of Rule 15(a) applies. They provide competing case law on the subject, and, indeed, the Eleventh Circuit recently recognized that "there is some tension in our circuit's case law on the proper standard for a court to evaluate a *post-judgment* motion for leave to amend, i.e., whether the standards of Rule 15(a) or the standards of Rules 59(e) and 60(b) apply." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1249 (11th Cir. 2023). Ultimately, the Eleventh Circuit concluded in *MacPhee* that the right to amend under Rule 15(a) "terminates" where, as here, a complaint has been dismissed and final judgment has been entered. *Id.* at 1250. It instructs that a plaintiff may still request leave to amend after a

3

judgment has issued but that a court must evaluate that request under Rules 59(e) and 60(b). *Id.* Under Rule 59(e), a court may reconsider its judgment under the three limited circumstances detailed above—in short, (1) newly discovered evidence, (2) a change in controlling law, or (3) clear error. Under Rule 60(b), a court "may relieve a party . . . from a final judgment" under six circumstances, including "any [ ] reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

In their briefing, the Plaintiffs argue that *MacPhee* did not settle the question of post-judgment leave to amend. *MacPhee* relied on *Czeremcha v. International Association of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552 (11th Cir. 1984), as the earliest precedent on the question. But the Plaintiffs argue that the 1981 decision in *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597–99 (Former 5th Cir. Nov. 1981), rather than the 1984 decision in *Czeremcha* is the earliest binding precedent on which the *MacPhee* court should have relied. (Reply Br. in Supp. of Pls.' Mot. for Recons., at 9 n.6). While it is possible that *Dussouy* was the earliest precedent,[1] the Court defers

---

[1] It appears that the *Dussouy* case is a "[f]ormer Fifth Circuit case" pursuant to § 9(1) of the Fifth Circuit Court of Appeals Reorganization Act ("Reorganization Act"), Pub. L. No. 96-452, 94 Stat. 1994 (1981) (codified at 28 U.S.C. § 41). Under § 9(1), a case "submitted for decision [before the effective date of this Act] . . . shall be had in the same manner and with the same effect *as if [the Reorganization Act] had not been enacted.*" Reorganization Act § 9(1), 94 Stat. at 1995 (emphasis added). As a result, and as other Eleventh Circuit cases have suggested in dicta, cases under § 9(1) that were submitted but not decided prior to October 1, 1981, are likely binding on this circuit. *See Bank v.*

to the reasoning of *MacPhee*. The Eleventh Circuit may clarify in the future.[2]

For now, the Court notes that *Czeremcha* stated that the Eleventh Circuit "ha[d] not expressly decided the issue" prior to its decision. 724 F.2d at 1555. Moreover, *Dussouy* appears to simply assert that Rule 15(a) "governs amendments to pleadings" in the post-judgment phase. 660 F.2d at 597. There, the plaintiff moved post-judgment to vacate the dismissal and amend its complaint and the Eleventh Circuit found—without citation or further

---

*Pitt*, 928 F.2d 1108, 1112 n.4 (11th Cir. 1991) (treating *Dussouy* as binding precedent), *overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002); *Tallahassee Branch of NAACP v. Leon County*, 827 F.2d 1436, n.1 (11th Cir. 1987) ("As a decision of a non-unit panel of the former Fifth Circuit, we would be required to consider [the case in question] as binding precedent." (citing *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 24 (11th Cir. 1982))).

    The Court notes that the Eleventh Circuit has often cited *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. Nov. 1981) (en banc), for the proposition that decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding in this circuit. *See, e.g.*, *Scoggins v. Pollock*, 727 F.2d 1025, 1026 n.1 (11th Cir. 1984); *United States v. Varazo*, 118 F.4th 1346, 1353 (11th Cir. 2024). *Bonner*, however, expressly notes that it did not decide the "effect on Eleventh Circuit law . . . of decisions . . . handed down by the old Fifth after September 30, 1981 in cases submitted to that court for decision before October 1." 661 F.2d at 1209 n.5.

    [2] The Court independently notes that one point of tension remaining after *MacPhee* is how freely courts should grant amendments in post-judgment circumstances. *Czeremcha* states: "[A] plaintiff may still move the court for leave to amend, and such amendments should be granted liberally. [A] plaintiff may also move for relief under Rules 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered." 724 F.2d at 1556. *MacPhee* recognized this statement regarding "grant[ing] [amendments] liberally," *MacPhee*, 73 F.4th at 1250, but then applied only the stringent requirements of Rules 59(e) and 60(b), *id.* at 1250–51. In the instant case, the Court has followed in *MacPhee*'s steps and applied only the heightened standard.

5

discussion—that the request to amend "should be governed by the same consideration controlling the exercise of discretion under [R]ule 15(a)." *Id.* at 597 n.1. In contrast, *Czeremcha* included a fuller discussion of the issue. 724 F.2d at 1556 (finding, for example, that applying Rule 15(a) would "frustrat[e] 'the desire for certainty in the termination of litigation'").

### III. Discussion

#### A. Reconsideration

The Court denies the Plaintiffs' motion to reconsider its prior dismissal of Count VII of the Amended Complaint, alleging violations of the Electronic Communications Privacy Act. A motion for reconsideration is not a vehicle for repairing deficient motions, and the Plaintiffs have not shown that there is any newly discovered evidence, an intervening change in controlling law, or the need to correct clear error or prevent manifest injustice. *See Shaw*, 597 F.3d at 1383.

The Plaintiffs first argue that the Court did not analyze the "crime-tort exception" under the ECPA, and that its doing so was clear error justifying reconsideration. (Br. in Supp. of Pls.' Mot. for Recons., at 2–3, 7). The ECPA prohibits the intentional interception of electronic communications as well as the disclosure and use of the contents of those illegally intercepted communications. *Tapley v. Collins*, 211 F.3d 1210, 1213 (11th Cir. 2000) (citing 18 U.S.C. §§ 2511(1)(a), (c)–(d)). Under the "party exception" in § 2511(2)(d),

the above conduct is not prohibited if the person intercepting the communication is "a party to the communication" or if "one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d). But the party exception is inapplicable if "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* This is the crime-tort exception. And the Plaintiffs argue that the Court did not analyze this exception with respect to the Amended Complaint's allegations that "Piedmont "had a purpose that was tortious, criminal, and designed to violate . . . . [the Health Insurance Portability and Accountability Act (HIPAA)]." *See* Am. Compl. ¶ 462; *see also id.* ¶¶ 167, 173–79, 216.

The Court disagrees with the Plaintiffs' assessment. In its Opinion and Order dismissing the Amended Complaint, the Court summarized Piedmont's position, including that the Plaintiffs "fail[ed] to plausibly allege an interception or a purpose to commit a crime or tort" and that Piedmont's "purpose" was to "drive marketing and revenue" rather than act tortiously or criminally. (Aug, 28, 2024 Op. & Ord., at 10–11). The Court then stated that "the weight of persuasive authority in similar pixel tracking cases supports Piedmont's position." The Court then cited several cases to justify this conclusion. Although the Court did not detail how each part of each case supported each part of Piedmont's arguments, the cases do as a whole support

7

Piedmont's position, as described by the Court. The Court lists these cases below to clarify how they address the party exception and the crime-tort exception.

The Court cited seven cases involving the Meta Pixel or similar circumstances for the proposition that the party exception applied to defendants like Piedmont. In those seven cases, the courts determined that the defendants were the recipients of the communications in question, so they fell under the party exception and could not "intercept" the communication by the terms of the statute. Five cases concern healthcare providers using Pixel or Pixel-like tools on their websites and patient portals, just as Piedmont had. *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (applying the party exception where a defendant used the Meta Pixel); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (same regarding custom analytics scripts);[3] *Santoro v. Tower Health*, 2024 WL 1773371, at *3–4 (E.D. Pa. Apr. 24, 2024) (same regarding the Meta Pixel);

---

[3] The Plaintiffs argue that the Court relied on an "outdated analysis" in *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023). However, the Court cited a different order in its analysis. (*See* Aug, 28, 2024 Op. & Ord., at 12 (citing Kurowski, 659 F. Supp. 3d at 938)). That being said, in all orders mentioned by the Plaintiffs and involving Rush System for Health ("Rush"), the Northern District of Illinois found that Rush was a party to the communication it received, which is the proposition discussed here. *See Kurowski*, 683 F. Supp. 3d at 844; *Kurowski*, 659 F. Supp. 3d at 938; *Kuroswki v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023), *Kuroswki v. Rush Sys. for Health*, 2024 WL 3455020, at *1, 6 (N.D. Ill. July 18, 2024).

*Okash v. Essentia Health*, 2024 WL 1285779, at *3–4 (D. Minn. Mar. 26, 2024) (same regarding the Meta Pixel); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (same regarding the Meta Pixel, though the application of the party exception was not contested here). A sixth case, *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, concerns defendant internet advertising companies that utilized a specific Google cookie. 806 F.3d 125, 144–45 (3d Cir. 2015). And a seventh case also applied the party exception but with respect to Amazon's alleged transmission of sensitive information—input by buyers on its site—to a third party tasked with verifying the identity of buyers. *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001).

The Plaintiffs advance various reasons for why some of these cases are distinguishable from the facts they allege, including that pixel technology is more "advanced" than the traditional cookies used in *In re Google* and that *Crowley* concerned a communication by email and not any other technology. (Br. in Supp. of Pls.' Mot. for Recons., at 11–12). The Court need not spend time responding to these arguments, which seek to repackage prior arguments and do not identify any newly discovered evidence, controlling precedent, or clear errors. *See Brogdon*, 103 F. Supp. 2d at 1338; *Shaw*, 597 F.3d at 1383. But it is nonetheless clear that several of the cases on which this Court relied do directly concern the Meta Pixel, and the Court was within its discretion to find

9

any other cases persuasive.

In addition to the party exception cases, the Court cited two cases for the proposition that the crime-tort exception did not apply to Piedmont: *Okash v. Essentia Health,* 2024 WL 1285779 (D. Minn. Mar. 26, 2024), and *Nienaber v. Overlake Hospital Medical Center*, 2024 WL 2133709 (W.D. Wash. May 13, 2024). As Piedmont correctly points out, (Def.'s Resp. Br. to Pls.' Mot. for Recons., at 7 ("In *Okash*, the court rejected the *precise allegations* Plaintiffs advance here . . .")), the Minnesota district court in *Okash* considered facts nearly identical to the present case and held that the crime-tort exception did not apply, 2024 WL 1285779, at *4–5 (D. Minn. Mar. 26, 2024). There, the Court considered whether the crime-tort exception applied under HIPAA to a defendant that had used the Meta Pixel. *Okash*, 2024 WL 1285779, at *3–5. According to *Okash*, the tort-crime exception applies if a party to the communication illegally intercepts the communication and then, in an "independent act," uses it for the "purpose" of committing a crime or tort. *Id.* at *4 ("'[I]t is well established that' the crime-tort exception 'only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself.'" (alterations in original and citation omitted)). The *Okash* court held that the plaintiff's allegations of "simultaneous interception and disclosure of information to Meta" did not satisfy this "independent act" requirement. *Id.* Moreover, the Court found particularly persuasive the

10

statement in *Okash* that, even if the plaintiff's "targeted advertising" was itself considered an independent act, it would not satisfy the "purpose of committing a crime or tort" requirement where the defendant's "primary motivation was to make money, not to injure plaintiffs tortiously." *Id.* (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)).

To rebut *Okash*'s reasoning, the Plaintiffs appear to re-assert in their reply brief that Piedmont's *disclosure* of the communication to Facebook was a tortious or criminal act independent of the *interception* of the communication. (*See* Reply Br. in Supp. of Pls.' Mot. for Recons., at 6; *see also* Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 30 (arguing the same in the initial round of briefing)). However, this argument is the very thing that both *Okash*—as already discussed—and *Nienaber* rejected. The *Nienaber* court specifically considered whether the crime-tort exception applied to a defendant who had used the Meta Pixel. 2024 WL 2133709, at *15. The plaintiff there argued that the "transmission of [ ] communications to third parties" was a distinct and independent act from the interception of those communications. *Id.* at *15. The third parties in question included Facebook, and the transmission occurred simultaneously with interception via the Meta Pixel—just as in the instant case. Ultimately, the *Nienaber* court held that the plaintiff "fail[ed] to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission." *Id.* Again, both *Okash* and *Nienaber*

11

were cited in the Opinion and Order and directly address the Plaintiffs' arguments, and the Plaintiffs have failed to provide any controlling law that would warrant a departure from the Court's reasoning.

### B. Leave to Amend

The Court denies the Plaintiffs' motion in the alternative for leave to amend. As previously stated, the Plaintiffs must satisfy the heightened standard under Rule 59(e) or Rule 60(b) rather than the more liberal standard of Rule 15(a). *MacPhee*, 73 F.4th at 1249. Thus, the Court construes the Plaintiffs' request for leave to amend as motions under Rule 59(e) to amend the judgment and Rule 60(b) to set aside the judgment. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361 (11th Cir. 2006) (identifying those motions as proper in the present circumstances). But, as the Court explains below, the Plaintiffs do not meet the heightened standard for several reasons.

First, the Plaintiffs do not present any newly discovered evidence as would be required by Rule 59(e). As an initial matter, the Plaintiffs did not attempt to argue in their opening brief that any newly discovered evidence exists. But, in replying to Piedmont's argument regarding undue delay, the Plaintiffs did argue that they did not learn about a number of the new facts alleged in the proposed Second Amended Complaint until "*after* Piedmont's motion to dismiss briefing was complete." (Reply Br. in Supp. of Pls.' Mot for Recons., at 10–11). The Court briefly considers these newly discovered facts as

12

a potential avenue through which the Plaintiffs might seek Rule 59(e) relief.

The Plaintiffs explain that, after becoming aware of new facts, they chose not to request leave to amend while the dismissal motion was pending due first to an ongoing mediation and then to ongoing discussions regarding class resolution after mediation failed. (*Id.* at 11). And it appears at first glance that several of the newly discovered facts would cure pleading deficiencies that the Opinion & Order raised. However, the Court finds these arguments insufficient for Rule 59(e) purposes. A court should deny a motion under Rule 59(e) "absent some showing that the evidence was not available during the pendency of the motion." *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 WL 3012298, at *8 (11th Cir. July 29, 2022) (citing *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997)). As argued by the Plaintiffs, the Plaintiffs learned of these "newly discovered" facts in the period in which the dismissal motion was still pending. The dismissal motion was submitted in February 2024 and remained pending until the Court's Opinion & Order in August 2024. Thus, it appears that the Plaintiffs had ample time to seek leave to amend during the pendency of the dismissal motion and should have done so to present any newly discovered facts. Moreover, the parties each filed notices of supplemental authority in the interim period [Docs. 35, 37, 43, 45], indicating to the Court that the Plaintiffs returned to the dismissal motion multiple times throughout its pendency.

Second, the Plaintiffs plainly do not identify any intervening changes in controlling law for any of its claims, including the ECPA claim (Count VII) as discussed above and the invasion of privacy claim (Count I)—both of which were dismissed with prejudice. The Court thus does not discuss this point further.

Third, the Plaintiffs do not identify any other "clear error" or "manifest injustice" under Rule 59(e) or "any other reason that justifies relief" under Rule 60(b)(6). While the Plaintiffs argue that it would be unjust to prevent them from amending at least once following guidance from the Court, (*see* Reply Br. in Supp. of Pls.' Mot. for Recons., at 8; Br. in Supp. of Pls.' Mot. for Recons., at 4–5), the Court finds that this concern does not rise to the level of "manifest injustice" under Rule 59(e) or otherwise justify the "extraordinary" remedy of setting aside a final judgment under Rule 60(b)(6). *See Shaw*, 597 F.3d at 1383; *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (citing *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996)).

Notwithstanding the above, the Plaintiffs are correct that the Court dismissed Counts II–VI without prejudice. (Op. & Ord., at 10). The Court cited various pleading deficiencies that may certainly have been cured under Rule 15(a)'s more liberal amendment standard. The heightened requirements of Rule 59(e) and Rule 60(b) simply do not seem to afford post-judgment relief to amend in the way the Plaintiffs have requested. Because the Court

14

dismissed Counts II–VI without prejudice, the Plaintiffs may of course re-file any of these claims in a new action. *See Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 2024 WL 1509215, at *2 (M.D. Fla. Mar. 14, 2024) (denying leave to amend in a similar post-judgment situation, where the plaintiff's claims were dismissed without prejudice); *see also id.* ("While dismissal without prejudice allows plaintiff to 'refile before the expiration of the applicable statute of limitations,' it does not change that this case was dismissed. This Court cannot proceed on a closed docket . . . ." (first citing *Alexander v. Bradshaw*, 599 F. App'x 945, 946 (11th Cir. 2015) (per curium); and then citing *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 2021 WL 12194799, at *2 (M.D. Fla. Jan. 11, 2021))).

## IV.   Conclusion

For the foregoing reasons, Plaintiffs T.D., A.G., J.G., and K.W.'s Motion for Reconsideration or Leave to Amend in the Alternative [Doc. 48] is DENIED.

SO ORDERED, this ____10th____ day of December, 2024.

THOMAS W. THRASH, JR.
United States District Judge